## JAMES GREENWADE *v.* COMMONWEALTH.

**Criminal Law—Homicide.**

> Where in a murder case the evidence indicates that the killing was done by one not indicted with the accused and where the indictment contains no specific charge that the accused was present aiding and abetting the commission of the crime, an instruction is erroneous which says to the jury in substance, that if the accused was present, aiding in the commission of the crime, he was as guilty as the man who did the killing. In the absence of the indictment of the other man and in the absence of a charge against the accused of aiding and abetting, before he can be found guilty it must be found that he fired the shot that killed the deceased.

**Evidence of Conversation.**

> Where the commonwealth in a criminal case introduces a part of a conversation had with the defendant, the defense has the right to give the whole of the conversation and to explain it fully.

**Evidence Inadmissible.**

> Where no difficulty had occurred between the accused and the person killed, and no threat or demonstration of anger had been made by the accused toward any one, it was error to admit evidence of a witness that on the day of the killing the defendant had said, "That he could shoot a man just to see him kick," where the witness said that the words were spoken in a jocular manner and no reference to the accused or any one else, and the accused was in a good humor and laughing at the time.

### APPEAL FROM BATH CIRCUIT COURT.

November 19, 1878.

OPINION BY JUDGE PRYOR:

The appellant, Greenwade, being accused of the murder of Ballard Elam in the county of Morgan on the 18th of February, 1875, was indicted by the grand jury of that county for the offense, and upon his trial was convicted of manslaughter and sentenced to the state prison for the period of twenty-one years.

The facts conduce to show that on the evening of the 18th of

February, 1875, the appellant, the deceased Elam, and one Powell Henry, were in company with each other nearly the entire evening, in the town of West Liberty, and all of them under the influence of liquor. That Henry and the deceased were engaged in quarreling much of the time, resulting finally in a fight between the two, the appellant being present, and is shown to have had a pistol; but whether he used it or gave it to others does not appear. A witness states that after some abusive epithets applied by the deceased to Henry, he saw the hand of the accused with a pistol in it, and his arm extended toward Henry as if he was trying to hand it to him. The three left the place where the fight took place, going a short distance, when two reports of a gun or pistol were heard near where these parties were, and the deceased found a few minutes afterward shot through the body and in a dying condition. It was dark when the deceased was shot, and no one except the parties implicated were present when the firing took place. The accused walked from where the shooting occurred a distance of some twenty or thirty yards, and stated that Henry had shot the deceased. Much testimony was introduced showing the acts and conduct of these parties during the evening, that will not be noticed or its effects discussed, as the case must go back for another trial.

The indictment charges the accused with the murder of the deceased by shooting him with a pistol in the usual form, and upon the trial of the case, the principal ground of defense was that Henry killed the deceased and not the accused.

The court instructed the jury, in substance, that if the appellant was present, aiding in the commission of the crime, he was as guilty as Henry, and to this instruction an exception was taken, based upon the idea that, as Henry was not indicted with the accused, and as there was no specific allegation that the latter was present aiding and abetting the commission of the crime, he must be shown to have fired the shot that killed the deceased before the commonwealth was entitled to a conviction. If this was the only error complained of, this court would sustain the judgment below. Although indicted as principal in the first degree a party can be convicted as a principal in the second degree; and if Henry had been jointly indicted with the appellant, both as principals in the first degree, the same argument could be adduced with equal force against the conviction of the accused. If the testimony conduced to show that Henry did the shooting counsel would say that the accused should be discharged be-

cause the indictment failed to notify him of the particular offense of which he was asked to be convicted, viz.: of aiding and abetting Henry in the shooting of Ballard Elam.

The killing of deceased was the act of all engaged in it, whether as principal in the first degree or as aiders and abettors.

The blow or shot causing the death or injury is in contemplation of law the act of all the parties engaged in it, whether as principals in the first or second degree. There is no necessity for making any distinction in an indictment for either murder or manslaughter between the parties charged with the offense. All who participate or aid in the commission of the crime are guilty; and although one may be guilty of murder and the other of manslaughter by reason of the killing, an indictment for the murder of the person slain, charging all as principals in the usual form, is a sufficient statement of the acts constituting the offense to enable those accused to know what is intended and prepare for their defense; and if one only is indicted, although he may not be the actual perpetrator of the crime, he may be convicted under such an indictment. 1 Wharton on Criminal Law, 130.

By the instructions based on the hypothesis that the shooting was done by Henry, the court below seems to have omitted any instruction that would authorize the jury to find the accused guilty of manslaughter. As was said by this court in the case of *Mickey v. Commonwealth,* 9 Bush 593, in discussing the effect of an instruction in a case like this, that the one aiding and abetting may have acted upon sudden impulse without malice on his part, and in ignorance of the malicious motives of those who actually fired the shots; if so he is guilty of manslaughter and not of murder. It may be murder in the party striking the fatal blow and manslaughter on the part of the abettor. This is not error, as the record is now presented, but upon the return of the case upon a like state of facts an instruction should be given embracing this view of the issue.

The second error complained of is that during the progress of the trial the commonwealth introduced Frank Thomas, who stated that on the evening of the shooting a short time before it was dark the accused handed him a pistol to load; that he did load it and left it in Kendall's grocery, etc. On cross-examination the witness was asked if the accused stated at the time why he wanted it loaded. The attorney for the commonwealth objected to the witness answering the question, and his objection was sustained. The accused

9

avowed by his counsel he could prove by the witness that when he handed him the pistol he told him he was going that night to McGinn's a distance of five· or six miles to see about some hogs, and that as it was rather a bad country where McGinn lived, he wanted his pistol loaded. The object the commonwealth had in view by this testimony was to create the presumption of malice, as well as to repel the idea that Henry was the guilty party, and it was therefore proper to permit anything that was said by the accused to the witness at the time the request to load the pistol was made, in order to explain why he had the weapon in his possession, and the purpose for which he wished it loaded. Whether his intentions in · regard to the use of the pistol were expressed in good faith was a question for the jury to decide, and the commonwealth certainly had no right to confine the witness to so much of the statement made by the accused as might conduce to show his guilt ·and exclude that portion of it tending to explain his possession of the deadly weapon or the use that he intended to make of it.

The third error complained of was the refusal of the court to permit the accused to show an absence of all motive on his part to kill Elam, by proving his interference to prevent Henry from injuring Elam when engaged in the fight, as well as other acts of friendship indicated on the part of the accused toward deceased on the evening of the difficulty.

The testimony on the part of the commonwealth shows that the three, Elam, Henry and the accused, were together during the most of the evening, and the conduct and the actions of the accused during that time is relied on by the commonwealth to establish his guilt. When, therefore, the witness stated that he separated Henry and Elam at the instance of parties present, if at the instance of the accused, the witness should have been permitted to ·so state on the cross-examination. It was avowed by counsel that the witness would make such a statement and in addition that accused had advised the deceased to go home. All these facts tended to show a friendly feeling on the part of the accused toward the deceased, and should have gone to the jury, along with the acts and conduct of the accused, relied on by the commonwealth as evidence of malice on the part of the accused, and as tending to show that he, and not Henry, fired the pistol.

The fourth error complained of is that the court permitted the attorney for the state to prove the acts and conduct of Henry subse-

quent to the killing, in order to establish his innocence and with a view of showing that the accused was guilty.

Henry was a competent witness for the commonwealth and neither his declarations nor conduct after the killing should have gone to the jury for the purpose of establishing his innocence or the guilt of the accused. The demonstrations on the part of Henry favorable to his innocence as the case was presented to the jury, necessarily implied the guilt of the appellant. It was incompetent and should have been excluded.

The fifth error assigned is that the commonwealth was permitted to prove a statement made by the accused on the day of the killing to the effect "that he could shoot a man just to see him kick." No difficulty had then occurred between Elam and Henry, or if so, no threat or demonstration of anger had been made or exhibited by the accused toward any one. It was spoken, as the witness says, in a jocular manner; had no reference to the deceased or any one else, and the appellant was in a fine humor and laughing at the time, no one paying any attention to it. It was error to admit the statement.

The sixth error assigned is the refusal of the court to permit the statement made by the accused shortly after Elam was shot as to who fired the pistol. It appears that as soon as the shot was fired appellant left the scene of the difficulty and walked a distance of twenty-five or thirty yards, making a statement to the witness as to the manner in which Elam was killed. It is insisted that this was a part of the res gestæ and should have been admitted as original evidence. If part of the res gestæ it would be competent as against Henry, and certainly it cannot be maintained that a statement made by the accused in explanation of or as to the manner in which Elam was killed is to be received as evidence to establish the guilt of Henry. The statement, if true, shows that appellant was not a party to the act of killing, and had no connection with it except to be present. If Henry was on trial he would be a competent witness, but such statements cannot be received for the purpose of establishing his own innocence. *Bradshaw v. Commonwealth,* 10 Bush 576.

For the errors indicated the judgment is *reversed* and the cause remanded with directions to award the appellant a new trial, and for further proceedings consistent with this opinion.

Judge Elliott not sitting.

*H. L. Stone, for appellant. Moss, for appellee.*